No. 46,122

STATE OF KANSAS, *Appellee,* v. THEODORE A. NIRSCHL, *Appellant.*

(490 P. 2d 917)

Opinion filed November 6, 1971.

*Russell Shultz,* of Wichita, argued the cause and *Leonard F. Watkins, Jr.,* of El Dorado, was with him on the brief for appellant.

*Larry Kirby,* deputy county attorney, argued the cause, and *Vern Miller,* attorney general, and *Keith Sanborn,* county attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: The defendant, Theodore A. Nirschl, has appealed from his conviction by a jury of first degree burglary and possession of burglary tools. His motion for a new trial was denied after an evidentiary hearing, and his motion for an *in camera* inspection of the state's file, filed after his conviction, was also denied.

At no time, before or during the trial, did the defendant deny committing the burglary or possessing the burglary tools—in fact, he admitted the offenses. His sole defense appears to be that at the time of the commission of the offenses he was entrapped on purpose by Sheriff Vern Miller, whom, he claimed, had previously made contact with his accomplice who then set up the burglary with the sheriff's knowledge and for the purpose of inducing him to commit the offenses so that he could be prosecuted.

Highly summarized, the evidence showed the following: On January 6, 1970, Sheriff Miller received information that the home of Eugene P. Wetzel, in Wichita, would be burglarized during the night. The sheriff called one Canfield to request that he contact Wetzel and attempt to secure his (Wetzel's) cooperation in apprehending the burglars. Canfield arranged for Wetzel to meet the sheriff at an eastside shopping center at 8:00 p. m. Prior to his meeting Wetzel, the sheriff contacted Detective Werbin and asked him to get some deputies together to surround the Wetzel home later that night, and to advise the Wichita Police Department of what was to occur.

The sheriff rode in Wetzel's car to his home located on the east side of Wichita. Wetzel and his wife went to Arkansas City for the evening pursuant to plans made much earlier, leaving the sheriff locked inside the house. Before Wetzel left, the sheriff made an examination of the house and then crawled upon a ledge, approximately eight feet high, between rooms in the house. About

two hours later, the sheriff heard noises and saw two men enter the house through the south glass doors in the back of the house. He recognized the defendant who was holding a bar and a screwdriver in his hand. After a short conversation, the two men started moving around. The sheriff could hear doors move, a mumbled conversation, and movement in the other part of the house.

The sheriff gave a prearranged signal over a walkie-talkie he had in his possession, and heard both a loud knock on the front door and the doorbell ring. Hearing the knock, the defendant ran into the room where the sheriff was positioned, who, with gun in hand, jumped from the ledge and shouted, "[h]old it, Nirschl. You're under arrest." The defendant stopped, and replied, "[d]on't shoot, you've got me." The sheriff ordered Nirschl to proceed out the way he came in. Both men went out through the glass doors and into the backyard.

There were eleven to thirteen police officers surrounding the house, and upon hearing the sheriff and the defendant in the backyard, they started toward the rear. The sheriff, noting this fact, ran toward the front of the house and shouted, "[c]over off the front. There's a man inside." When he came to the front of the house, he observed the garage door was open and he also observed a man running down the street about three quarters of a block away. The sheriff fired several shots at the man, but the fleeing man, apparently unhurt, kept running. The police officers pursued the escaping burglar, but eventually lost him.

When Nirschl was escorted by sheriff's deputies from the backyard, he commented, "[b]oy, they've got me cold." Later, he was placed in a police car in the company of two officers, and he said, "[b]oy, they've got me cold. I might as well plead guilty." Nirschl volunteered to plead guilty, and the officers advised him he would have to have an attorney. The defendant's statements were spontaneous admissions.

While at the scene, the defendant was advised of his constitutional rights by a detective, in full compliance with *Miranda*, who asked Nirschl, "do you wish to talk to us now." The defendant replied in the affirmative. When asked who had been with him, the defendant answered, "I won't tell you." Later, at the police station, Sheriff Miller also questioned the defendant as to the identity of the second man. Nirschl stated in reply that he was by himself, and smiled and shrugged his shoulders.

The appellant first contends that one Robert Brunch, acting as an agent of the state, enticed him into participating in a staged crime for the purpose of entrapment. To support his position, counsel sought to introduce the testimony of Richard Julius, Samuel Pruett, and Ruby Nirschl. The nature of that testimony was certain conversations each had with Brunch and other conversations between the defendant and Brunch which the witnesses overheard. The state objected to the evidence contending it was hearsay, and the district court sustained. It should here be noted, Brunch was not present in the courtroom, although a subpoena had been issued but never served.

The appellant contends the testimony was admissible hearsay evidence under the theory that the testimony came within the ambit of two statutory exceptions to the hearsay rule: K. S. A. 60-460 (*i*) (1) and (2), and K. S. A. 60-460 (*j*). K. S. A. 60-460 (*i*) creates an exception to the exclusion of hearsay evidence for vicarious admission. Subsection (1) of that statute declares that an out of court declaration is admissible, as against a party, if the statement concerns a matter within the scope of an agency or employment of the declarant for that party and was made before the termination of that relationship. The appellant contends an agency existed, and that the testimony was admissible. The point is not well taken. The appellant failed to establish the prerequisite premise for admission—that there be some extrinsic evidence in the record that an agency existed. The fact of agency cannot be proved by the hearsay evidence of the purported agent. (*Cross v. Aubel,* 154 Kan. 507, 119 P. 2d 490; *Key v. Thomas Lyons Co.,* 109 Kan. 281, 198 Pac. 928; Gard, Kansas Code of Civil Procedure Annotated, § 60-460 (*i*), p. 476.) There is no extrinsic evidence in the record to support or even imply, the alleged agency relationship between the state and Brunch, hence we conclude the threshold requirement was not met. Both the law and the evidence support the district court's ruling.

Under K. S. A. 60-460 (*i*) (2), statements of "co-conspirators" are admissible hearsay, provided such statements concern the conspiracy and were made during the existence of the conspiracy. The appellant urges that a conspiracy existed between the sheriff and Brunch for the purpose of entrapping him, thus, it follows that statements made by Brunch are admissible against the co-conspirator, the state. Once again, the appellant assumes the existence of a relationship upon which the exception is premised. There must be

some extrinsic evidence in the record that a conspiracy existed. We find no evidence in the record other than the hearsay itself to support the assertion of the existence of a conspiracy. (*State v. Borserine,* 184 Kan. 405, 411, 337 P. 2d 697; *State v. Shaw,* 195 Kan. 677, 680, 681, 408 P. 2d 650; *State v. Adamson,* 197 Kan. 486, 488-490, 419 P. 2d 860; *State v. Trotter,* 203 Kan. 31, 453 P. 2d 93; Gard, Kansas Code of Civil Procedure Annotated, § 60-460 [*i*], p. 478.)

In addition, the appellant suggests the testimony is admissible as an exception to the hearsay rule on the grounds the statements of the declarant were declarations against interest, pursuant to K. S. A. 60-460 (*j*). That section permits the admission of statements which were at the time of their assertion so far contrary to the declarant's pecuniary, proprietary, penal or social interests that a reasonable man would believe the statements would not have been made unless the declarant believed them to be true. Evidence of the statements in question might have been declarations against the interest of Brunch; however, such statements would not be competent to bind Nirschl or the sheriff unless some conspiracy was shown. Such was not the case. (*Thompson v. Norman,* 198 Kan. 436, 424 P. 2d 593; *State v. Parrish,* 205 Kan. 178, 468 P. 2d 143; *Cooper v. Bower,* 78 Kan. 156, 96 Pac. 59.) The district court did not err in refusing to admit the testimony of Ruby Nirschl, Richard Julius, and Samuel Pruett.

The sheriff and other officers were at the scene of the crime on the basis of information supplied to law enforcement officers by an unnamed informant. Appellant sought to secure the identity of the informant but upon the state's objection, the district court refused to permit disclosure. Appellant contends the disclosure was essential to guarantee his right to a fair trial.

The privilege to refuse to disclose the identity of an informer is within the district court's discretion and will not be overturned unless that discretion is abused. The district court can compel disclosure pursuant to K. S. A. 60-436 if the identity of the informer has already been disclosed by some other source, or if his identity is essential to assure a fair trial of the issues. The privilege to refuse disclosure is based upon sound public policy to encourage those who have knowledge of crime to come forward and give information to law enforcement officers without fear of disclosure. Disclosure is not favored without just cause.

There is considerable merit in the state's analogy of this case to

that of *State v. Grider,* 206 Kan. 537, 479 P. 2d 818. While there is meager evidence to show the necessity of disclosure, we cannot say the district court abused its discretion in refusing to compel disclosure. (*State v. Robinson,* 203 Kan. 304, 454 P. 2d 527; *Grider,* supra.)

The appellant next contends the district court erred in refusing his post trial motion for *in camera* inspection of the state's file. We are not aware of any provision in the Kansas Code of Criminal Procedure for post trial discovery. It is arguable, however, that disclosure and post trial discovery may be necessary on certain occasions to insure due process, thus we do not categorically rule out the propriety of such a motion. See Barbara, Noblesse Oblige—Duty of Prosecution to Disclose Evidence in Criminal Case, 10 Washburn L. J., 54. However, we do question the timeliness and reasonableness of such a request in this case. There is absolutely no competent evidence in the record to support the appellant's claim of entrapment. Nowhere does he attempt to prove the state's file contained information in support of the theory of entrapment. We do not consider speculation by counsel sufficient cause to compel an *in camera* inspection. It appears from the record and the appellant's own brief that the thrust of the motion was an attempt to discover. We are not prepared to say that due process requires such a "fishing expedition." The burden was upon the movant, and it was not met.

The appellant testified in his own behalf. He admitted he had been at the scene of the crime on the night in question; that he was apprehended by Sheriff Miller, and that Brunch was his accomplice. During cross-examination, the appellant was questioned about conversations he had with the sheriff and Detective Malone subsequent to his arrest. He testified he had been advised of his rights pursuant to the *Miranda* mandate, and in response to their questions, he requested an attorney and said he did not want to talk further. Counsel objected to the line of questioning as being without the scope of the direct examination. The objection was overruled. On rebuttal, the testimony of the sheriff and the detective covered two areas: First, that appellant had been advised of his rights, and second, that he refused to identify his accomplice. Counsel objected on the ground that it was improper rebuttal. That objection was overruled.

This court has uniformly held that cross-examination must be responsive to testimony given on direct examination, or material and

relevant thereto; thus, resolution of such issues resides in the sound discretion of the district court, and will not be reversed unless that discretion is abused. (*Humphries v. State Highway Commission*, 201 Kan. 544, 442 P. 2d 475; *State v. Roth*, 200 Kan. 677, 438 P. 2d 58; *State v. Reuter*, 126 Kan. 565, 268 Pac. 845; *State v. Patterson*, 112 Kan. 165, 210 Pac. 654.)

Appellant's counsel opened up the subject of who was with him at the scene of the crime; he also opened up the question of appellant's arrest. It is reasonable to conclude the state should be permitted to inquire into the particulars of that arrest and whether the defendant had made other statements with respect to his accomplice. The questions asked on cross-examination were logically related to, were material and relevant to the veracity of the appellant's direct examination, and were formulated to lay a foundation for rebuttal testimony as to appellant's credibility as a witness. In *State v. Jackson*, 201 Kan. 795, 443 P. 2d 279, cert. den. 394 U. S. 908, 22 L. Ed. 2d 219, 89 S. Ct. 1019, this court said:

"When a defendant takes the stand as a witness, he takes his integrity and character with him and he cannot complain because he is subjected to the same inquiries and tests as other witnesses. The extent to which he may be cross-examined lies largely in the discretion of the trial court (*State v. Wilson*, 108 Kan. 433, 195 Pac. 618) subject to the limitations provided by K. S. A. 60-421. (See, also, *State v. Stewart*, 179 Kan. 445, 296 P. 2d 1071; *Unruh v. Kansas Turnpike Authority*, 181 Kan. 521, 313 P. 2d 286.)

"The appellant contends that whether or not he had an opportunity to tell his story before the trial was a collateral issue and should not have been used as the basis for rebuttal impeachment. We cannot agree. The appellant told a story which kept him away from the immediate scene of the crime. If the story was believed by the jury an acquittal would necessarily result." (1. c. 797, 798.)

With respect to the propriety of the rebuttal testimony, this court has held that evidence which could have been admitted in the case in chief but which was not, may be admitted in rebuttal to contradict some new fact or circumstance brought forth in the defendant's evidence. That is the case here. The state could not attack the credibility of the defendant's testimony until he had taken the stand. Once that issue was raised, it properly could be rebutted. (*State v. McGlade*, 165 Kan. 425, 196 P. 2d 173; *State v. McCorvey*, 199 Kan. 194, 428 P. 2d 762; *State v. Bean*, 181 Kan. 1044, 317 P. 2d 480.)

Other points have been raised and briefed by the appellant. They have been fully and carefully examined by the court. It would serve

no useful purpose to lengthen this opinion by discussing them. It is sufficient to say the district court did not commit reversible error in any respect on such rulings, nor did it err in overruling the defendant's motion for a new trial. It follows that the judgment and sentence of the district court must be and it is hereby affirmed.

It is so ordered.