No. 51,975

STATE OF KANSAS, *Appellee,* v. GWENDOLYN COHEN, *Appellant.*

(622 P.2d 1002)

Opinion filed January 17, 1981.

*Bruce R. Powell,* of Barnett & Lerner, Chartered, of Kansas City, argued the cause and was on the brief for the appellant.

*James F. Foster,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict finding Gwendolyn Cohen (defendant-appellant) guilty of felony murder (K.S.A. 21-3401) by reason of aiding and abetting (K.S.A. 21-3205) in the crime of aggravated robbery (K.S.A. 21-3427). The appellant raises two issues on appeal. She contends the trial court erred in failing to require the State to disclose the identity of confidential informants and in finding that there was sufficient evidence to support the verdict of guilty.

Late in the evening of October 16, 1979, the appellant left her home after an argument with her husband. The appellant had been drinking that evening and continued to drink with friends. The appellant eventually ended up at a local restaurant, L.D. Fant's Place, where she met "Mississippi Joe," a man later identified as Nobles Shuford. After talking for a while, the two drove around Kansas City, Kansas, went to Lawrence, Kansas, then returned to a truck stop in Kansas City, Kansas, where they both had breakfast.

On the morning of October 17, 1979, the appellant and Shuford met Samuel Minor and the three returned to the area near L.D. Fant's Place and Big Rube's Pool Hall. The appellant was then driving Shuford's Cadillac. At first she parked Shuford's car near the sidewalk, but Shuford had the appellant back the car into the alley, as he did not want people walking around the car. The appellant and Shuford retired to the backseat of his Cadillac and engaged in hugging and kissing.

The appellant gave a statement to the police which she has consistently upheld in later statements. The appellant stated that she and Shuford were in the backseat of his car when two Negro males walked up to the car. One of the males shot at Shuford and stated it was a holdup. The bullet struck Shuford, who fell backwards out of the rear door of the car. The man who shot Shuford, later identified by the appellant as Samuel Minor, took Shuford's wallet and ran away, accompanied by the other man. The appellant identified the second robber as William Buckingham. The appellant stated that she did not see which direction the men ran, but that she got out of the car and ran away. She ran a few blocks to the home of Dorsey Edwards. Within a few minutes she returned to the crime scene. The appellant was questioned by Detective James Parks, and was arrested.

At the trial the State presented the testimony of two witnesses who stated they heard shots, then looked in the direction of the shots. The first witness testified she saw two men standing by the car, saw the men run, then saw a woman get out of the car ten to fifteen minutes later, and run away. A policeman impeached this witness's testimony with a prior inconsistent statement by the witness. The policeman testified the witness previously told him all three persons fled the scene together.

A second witness testified she heard a shot, then saw two boys by the car. She saw a man fall out of the car, then saw the two boys run. This witness saw the girl immediately exit the car and follow the two boys, running.

The State's third key witness, Vincent Figous, testified he overheard an argument about money, then heard a shot. He saw the appellant and three men near the car. Figous testified the appellant saw him and said, "[T]hat boy right there seen us." Upon being seen, Figous ran away.

The State presented Dorsey Edwards, who testified the appel-

lant appeared at his home the morning of the crime. Edwards testified the appellant came in his house, stood around for a few minutes and said she wanted a drink. The appellant then told Edwards she was looking for a fellow she had let have her gun. The appellant left shortly thereafter.

At the joint preliminary hearing for Cohen, Minor and Buckingham, held in November 1979, Judge Robert Foster overruled the appellant's motion to require the State to disclose its confidential informants. Detective James Parks had testified that he spoke with several persons and informants who had witnessed events preceding and following the robbery.

In December 1979, Judge Harry Miller heard arguments on a motion for discovery and disclosure of confidential informants. The judge ordered the State to disclose the identity of its confidential informants who were "material witnesses" to the crime. In pertinent part the court's order stated:

"That the testimony of Detective James Parks at the preliminary hearing in the above-captioned case revealed that one or more confidential informants had told him that they had seen several persons at the scene of the alleged crime, including one or more of the Defendants, that they had seen the Defendant Cohen drive a car around to the back of the store at the scene of the alleged crime, that they had heard a shot and witnessed the Defendants running from the scene. Therefore, such informant or informants are material witnesses to the alleged crime and are therefore material witnesses and their identity should be disclosed to the Defendants.

. . . .

"That the motion of Defendant Cohen requiring the State to disclose the name of its informants who were material witnesses to the alleged crime is hereby sustained and the State shall be required to disclose the name of such informant or informants."

In January 1980, on a motion for rehearing, Judge Miller reconsidered his prior disclosure order. Judge Miller made his ruling by letter dated January 21, 1980, which reads:

"Re: State vs Cohen       No. 79CR0876A
     State vs Buckingham   No. 79CR0876B
     State vs Minor       No. 79CR0876C

"Gentlemen:

"The State's motion to reconsider the order of the Court requiring the disclosure of the name of an informant was heard on January 17, 1980, and was taken under advisement.

"The previous order to disclose the name of the informant was based upon testimony given by Detective James Parks which the Court construed as indicating that Parks had talked to an informant who was a witness to the homicide.

Detective Parks testified again, however, and denied that he had ever talked to any informant who admitted to having seen what took place in back of the pool hall.

"It was Parks' testimony that upon arriving at the scene, he canvassed the area for possible witnesses, and that he talked to one person whom he knew and promised that any information received would be confidential and that he would not disclose the informant's name. In response to this, the informant told Parks that he had seen Buckingham and another man, whom he did not know, go around in back of the pool hall, that a short time later he heard what sounded like a gun shot, and then he saw Buckingham, the man, and a female run from the area. The informant's advice to Parks was that he 'should talk to Buckingham and he could tell him everything.' It is the contention of the defendants that this informant witnessed events so closely related in time to the homicide that his testimony could be helpful to the defense.

"Subsequently, the above three defendants were questioned and each gave written statements to the police. Each of the defendants admitted to being in back of the pool hall at the time of the homicide and described how the victim was shot as he sat in the backseat of his car with defendant Cohen and how his money was taken.

"Each defendant implicated one of the others as the one who did the shooting and took the money. Each admitted that following the shooting they ran from the scene. None of the three mentioned that anyone else was present at the time.

"It was also Parks' testimony that he made no promises to the informant or gave any consideration to him for his information other than the promise that his name would not be disclosed. It was his opinion that if the informant's name was disclosed, the informant's life would be endangered and that it would totally destroy Parks' effectiveness as a detective in that area, and, in fact, would seriously hamper all policemen from obtaining information from an informant in that part of town.

"In State vs Nirschl, 208 Kan. 111, l.c. 115, the underlying purpose of K.S.A. 60-436, is stated as follows:

" 'The privilege to refuse disclosure is based upon sound public policy to encourage those who have knowledge of crime to come forward and give information to law enforcement officers without fear of disclosure. Disclosure is not favored without just cause.'

"In this case, the informant only corroborates what the three defendants have already admitted, *i.e.*: that they were each in back of the pool hall at the time of the homicide and after the shooting ran from the scene. Their presence there and the fact that they ran are not in issue.

"Defendants have made no showing that the informant has information that is material and relevant and that his identity is necessary to assure them of a fair trial. They only speculate that he might know something and argue that they are, therefore, entitled to question him to find out. In my opinion, this is not sufficient to warrant disclosure of the informant's name, and defendant's motion will be denied."

Cohen, Minor and Buckingham were tried separately. Cohen and Minor were convicted of felony murder. Buckingham was acquitted.

The appellant contends the trial court erred in failing to require the State to disclose the identity of confidential informants. K.S.A. 60-436 provides:

"A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this state or of the United States to a representative of the state or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (*a*) the identity of the person furnishing the information has already been otherwise disclosed or (*b*) disclosure of his or her identity is essential to assure a fair determination of the issues."

The disclosure of the identity of an informant lies within the sound discretion of the district court. That discretion will not be overturned unless there is abuse. *State v. Braun,* 209 Kan. 181, 186, 495 P.2d 1000, *cert. denied* 409 U.S. 991 (1972); *State v. Nirschl,* 208 Kan. 111, 115, 490 P.2d 917 (1971). The privilege to refuse disclosure is based upon sound public policy to encourage those who have knowledge of crime to come forward and give information to law enforcement officers without fear of disclosure. Disclosure is not favored without just cause. *State v. Nirschl,* 208 Kan. at 115. It is incumbent upon the defendant to show the identity of an informant *is material* to the defense. *State v. Braun,* 209 Kan. at 186.

The United States Supreme Court in *Roviaro v. United States,* 353 U.S. 53, 1 L.Ed.2d 639, 77 S.Ct. 623 (1957), provided a basis for determining whether disclosure of an informant's identity was essential to assure a fair determination of the issues. In *Roviaro* the court stated:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. at 62.

We have examined the record and the relevant interests of the parties in the instant case. Detective Parks specifically addressed the State's interest in continuing the flow of information concerning crimes. Parks testified at the motion for rehearing of the disclosure order that information is hard to obtain in that area of town. Parks also testified that his normal technique when ques-

tioning persons in that area of town is to offer confidentiality. He stated that disclosure in this case could ruin his effectiveness as a detective and could lead to injury or death of one informant.

The appellant's countervailing interest is in preparation of an adequate defense. Because information is hard to obtain in that area of town, the defense would also have difficulty. During oral argument defense counsel stated he personally attempted to investigate and find witnesses, without success.

The crime charged was felony murder, as an aider and abettor in the crime of aggravated robbery. The trial court instructed the jury on the elements of felony murder, as follows:

"2. You should first consider whether or not the defendant is guilty of murder as charged in Count I. The material elements of murder in the first degree, insofar as Count I is concerned, are as follows:

"1. That in this County, on or about October 17, 1979;

"2. The defendant Gwendolyn Cohen, Samuel Minor, William Buckingham, and Warren Conner, or one of them, killed Nobles Shuford by shooting him with a gun;

"3. That it was done while the defendants were in the course of committing the crime of aggravated robbery;

"4. That the defendant Gwendolyn Cohen knowingly aided or assisted in some manner toward the commission of such robbery; and

"5. The shooting and killing of someone in the commission of such a robbery was, under all the circumstances, reasonably foreseeable as a probable consequence of committing or attempting to commit the robbery."

In the original order of disclosure, Judge Miller referred to "one or more confidential informants" and what "they" had observed prior to and subsequent to the crime. It is clear from the record that aside from the three defendants no one saw the actual shooting. At the preliminary hearing, Detective Parks referred to several informants, not just one. At the rehearing on the motion to disclose Detective Parks again referred to informants, in the plural. He testified that he questioned ten to fifteen people, three of whom supplied information. The informants told Parks they saw William Buckingham and another man go around back of the pool hall. They heard a gunshot, then observed Buckingham and a second man run away. They saw a *heavyset red-headed Negro female run away* (the description of the appellant).

In the order modifying the prior order to disclose, Judge Miller ruled that "the informant only corroborates what the three defendants have already admitted, *i.e.:* that they were each in back of the pool hall at the time of the homicide and after the shooting

ran from the scene. Their presence there and the fact that they ran are not in issue." Judge Miller found that the appellant made no showing that the informants had information that was "material and relevant" to her defense. The substance of Judge Miller's original ruling was that the State disclose the name of confidential informants who were *material witnesses* to the defense. His subsequent order, in effect, was not a reversal of his prior order; he elaborated on it, after hearing further testimony of Detective Parks, by finding that *none* of the confidential informants were material witnesses to the defense.

The appellant argues that the informants' testimony could be significant because it might impeach the testimony of the State's "star witness," Vincent Figous. It was Figous' testimony that was most damaging to the appellant's defense. Detective Parks' testimony at the motion for rehearing indicated that none of the informants witnessed what Vincent Figous witnessed. Hence, the informants could not have been used to impeach any material evidence.

It should be noted Samuel Minor was convicted of felony murder. Minor was tried separately and did not testify against the appellant during her trial. Prior statements of Minor were not used against the appellant. His appeal is reported in *State v. Minor,* 229 Kan. 86, 622 P.2d 998 (1981).

In conclusion, using the balancing test and considering the factors listed in *Roviaro,* we cannot say on the record presented that Judge Miller erred in refusing to require the State to identify any of the confidential informants. His finding that the defendants made no showing any informant had information that was material and relevant to the defense is supported by the record.

The appellant contends the trial court erred in overruling the motions for dismissal, directed verdict, judgment of acquittal, and new trial. The substance of all the motions goes to the sufficiency of the evidence to support the verdict of guilty. In a criminal action the standard of review on appeal is: Does the evidence viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt? *State v. McGhee,* 226 Kan. 698, 602 P.2d 1339 (1979). There is sufficient evidence in the record to support the jury verdict when reviewed on that standard. The appellant was present with the victim

before the shooting, and drove the victim's car from in front of the pool hall to the rear of the parking area. The appellant admitted being present during the shooting, and was seen fleeing the scene of the crime. Dorsey Edwards testified that the appellant appeared at his home, looking for someone to whom she had lent her gun. Vincent Figous testified to several facts incriminating to the appellant. The jury could reasonably conclude the appellant aided or assisted in the aggravated robbery and that a shooting and killing was a foreseeable consequence of that crime in accordance with instructions given by the trial court.

The judgment of the lower court is affirmed.