NOT DESIGNATED FOR PUBLICATION

No. 115,084

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SANTOS CARRERA-MORALES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ottawa District Court; JEROME P. HELLMER, judge. Opinion filed June 16, 2017. Affirmed.

*Gerald E. Wells*, of Jerry Wells, Attorney-at-Law, of Lawrence, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., HILL and SCHROEDER, JJ.

*Per Curiam*: Santos Carrera-Morales appeals from his conviction of aggravated escape from custody and battery against a law enforcement officer. At the time of the escape, Carrera-Morales was being held in the Ottawa County Jail under a contract with the Kansas Department of Corrections (KDOC). On appeal, Carrera-Morales argues that the district court erred in denying his motion to dismiss the charge of aggravated escape from custody. He does not, however, challenge his conviction on the charge of battery against a law enforcement officer. Under the circumstances presented, we find that the district court did not err in allowing the charge of aggravated escape to go to the jury, and

1

we find sufficient evidence in the record to support Carrera-Morales' conviction. Thus, we affirm.

FACTS

On July 11, 2008, the Sedgwick County District Court sentenced Carrera-Morales to life in prison after he was convicted of two counts of first-degree murder. Accordingly, the District Court placed him into the custody of the KDOC. In early 2012, KDOC transferred Carrera-Morales from the Ellsworth Correctional Facility to the Ottawa County Jail. At the time, KDOC had an "Agreement for Offender Housing Services" with Ottawa County and the Sheriff of Ottawa County. Under the terms of the agreement, KDOC could house inmates in the Ottawa County Jail in exchange for a per diem payment of $40.00 for each inmate.

On April 18, 2012, Carrera-Morales and another inmate attacked a corrections officer of the Ottawa County Jail as the corrections officer was leaving the control room. While they did so, a third inmate was able to enter the jail's control room. According to the officer, Carrera-Morales put him in a chokehold. Although the officer attempted to run down a hallway with Carrera-Morales on his back, he eventually fell to the ground because he could no longer breathe. Carrera-Morales was then able to leave the jail with three other inmates. However, by April 20, 2012, law enforcement officers had taken Carrera-Morales back into custody.

On July 13, 2012, the State charged Carrera-Morales with one count of aggravated escape from custody and one count of battery against a law enforcement officer. Prior to trial, Carrera-Morales filed a motion to dismiss both of the charges. In addition, he filed a motion to suppress, arguing that he was illegally detained in the Ottawa County Jail. Ultimately, the district court denied both motions, and the case proceeded to trial.

2

The district court commenced a 2-day jury trial on January 15, 2014. At trial, three employees of the Ottawa County Sheriff's Office testified about the events surrounding the escape. In addition, an undersheriff from Russell County testified about assisting in the return of Carrera-Morales to custody following his escape. The undersheriff testified that when Carrera-Morales was captured, he was wearing KDOC-issued sweatpants—which had his name and inmate number printed on them—inside out.

Keith Coleman, the Sheriff of Ottawa County, testified regarding the contract between Ottawa County and KDOC to house inmates. Moreover, the district court granted the State's motion to admit a copy of the inmate housing contract into evidence. Sheriff Coleman further testified that at the time of the escape, the Ottawa County Jail was housing Carrera-Morales on behalf of KDOC pursuant to the contract. He testified that Carrera-Morales and the other KDOC inmates were housed in a separate pod in the jail. According to Sheriff Coleman, the Ottawa County Jail kept the KDOC inmates segregated from county inmates because of differences in rules and procedures relating to their incarceration.

The Secretary of Corrections, Ray Roberts, testified that when an inmate is placed in the custody of the KDOC, he or she is not sentenced to a particular facility. Rather, the KDOC places the inmate based on such factors as available space. Roberts testified that he has statutory authority to lease or contract for space to house inmates in locations outside of the KDOC correctional facilities. According to Roberts, it was under this authority that KDOC inmates were housed in the Ottawa County Jails.

After deliberation, the jury found Carrera-Morales guilty of aggravated escape from custody and battery against a law enforcement officer. The district court subsequently sentenced Carrera-Morales to 128 months of imprisonment to run consecutive to his life sentence. Thereafter, Carrera-Morales timely filed a notice of appeal.

3

On appeal, Carrera-Morales contends that the district court erred by denying his motion to dismiss the charge of aggravated escape from custody in violation of K.S.A. 2016 Supp. 21-5911(b)(2)(G). We note, however, that Carrera-Morales does not appeal from his conviction of battery against a law enforcement officer. Because Carrera-Morales' argument is based on statutory interpretation, which involves a question of law, our review is unlimited. *State v. Castleberry*, 301 Kan. 170, 175, 339 P.3d 795 (2014). To the extent that Carrera-Morales is arguing that there was insufficient evidence to support his conviction on the charge of aggravated escape from custody, we view the evidence in the light most favorable to the State. See *State v. Garcia*, 282 Kan. 252, 259-60, 144 P.3d 684 (2006) (citing *State v. Cohen*, 229 Kan. 65, 71, 622 P.2d 1002 [1981]).

The principles of statutory interpretation and construction in Kansas are well known and often stated:

> "A basic tenet of [Kansas' rules of statutory interpretation] is that the intent of the legislature governs if it can be ascertained. To divine legislative intent, a court begins by examining and interpreting the language the legislature used. Only if that language is ambiguous does a court rely on any revealing legislative history, background considerations that speak to legislative purpose, or canons of statutory construction. Generally, a court should not read language into a provision." *State v. Ultreras*, 296 Kan. 828, 843, 295 P.3d 1020 (2013).

Generally, a court should construe a criminal statute in favor of the accused and resolve any reasonable doubt about its meaning in favor of the person subjected to the criminal statute. *State v. Lewis*, 263 Kan. 843, 847, 953 P.2d 1016 (1998). This rule, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative intent. 263 Kan. at 847.

K.S.A. 2016 Supp. 21-5911(b)(2)(G), states:

"(b) Aggravated escape from custody is:

. . . .

(2) Escaping effected or facilitated by the use of violence or the threat of violence against any person while held in custody:

. . . .

(G) upon incarceration at a state correctional institution while in the custody of the secretary of corrections."

Moreover, K.S.A. 2016 Supp. 21-5911(d)(4) provides that under this statute the term "state correctional institution" is the same as the definition of that term in K.S.A. 2016 Supp. 75-5202(d), which states:

"'Correctional institution' means the Lansing correctional facility, Hutchinson correctional facility, Topeka correctional facility, Norton correctional facility, Ellsworth correctional facility, Winfield correctional facility, Osawatomie correctional facility, Larned correctional mental health facility, Toronto correctional work facility, Stockton correctional facility, Wichita work release facility, El Dorado correctional facility, *and any other correctional institution established by the state for the confinement of offenders under control of the secretary of corrections*." (Emphasis added.)

It is undisputed that the KDOC contracted with the Ottawa County Jail to house inmates, including Carrera-Morales, according to the rules of the Secretary of Corrections. In fact, Carrera-Morales stipulated to this fact. Moreover, the Agreement for Offender Housing Services between KDOC and Ottawa County was admitted into evidence at trial and is in the record on appeal.

Pursuant to the plain language of K.S.A. 2016 Supp. 75-5210(k), the Secretary of Corrections has the authority to lease or contract for additional facilities as may be needed from time-to-time for the housing of KDOC inmates. Furthermore, the plain language of K.S.A. 2016 Supp. 75-5206(a) states that the Secretary of Corrections "shall

5

have authority to order the housing and confinement of any person sentenced to [KDOC] custody to any institution or facility . . . or to *any contract facility*, including a conservation camp." (Emphasis added.) Finally, the plain language of K.S.A. 75-5205(a) states in relevant part that "[t]he secretary of corrections shall have the general supervision and management of the correctional institutions of the state and such *other facilities as may be acquired by* lease, purchase or *contract* for the housing of persons in the secretary's custody." (Emphasis added.) Viewing these statutes in light of the contract between KDOC and Ottawa County, we conclude that Carrera-Morales remained in the custody of the Secretary of Corrections when he was housed in the Ottawa County Jail.

Furthermore, we conclude that while the KDOC inmates were being housed pursuant to the contract between Ottawa County and the Secretary of Corrections, the Ottawa County Jail served as a "correctional institution established by the state for the confinement of offenders under control of the secretary of corrections." See K.S.A. 2016 Supp. 75-5202(d); K.S.A. 2016 Supp. 75-5210(k). Finally, viewing the evidence presented at trial in the light most favorable to the State, we are convinced that a rational factfinder could have found Carrera-Morales guilty beyond a reasonable doubt of aggravated escape from custody in violation of K.S.A. 2016 Supp. 21-5911(b)(2)(G). We, therefore, affirm his conviction.

Affirmed.